## CAREY vs. ELLIS.

*Sixth District Court for Sacramento Co., Feb. T., 1858.*

STOPPAGE IN TRANSITU—SALE UNDER EXECUTION.

The right of stoppage *iu transitu* is lost to a vendor, if he allows a sheriff (who had

seized the goods before they came to the vendee's possession, under process of attachment issued at the suit of creditors of the vendee,) to sell them under execution without a claim or demand being made for them by the vendor prior to the sale.

A demand for the proceeds while in the sheriff's hands and before paid over to the creditors, is too late as an assertion of the right of stoppage *in transitu.*

Had the vendor demanded the goods prior to the sale—*semble* that he could have adopted the sale and have recovered the proceeds.

This bill was filed to obtain an injunction restraining the payment of the proceeds of the sale of certain property of an insolvent firm to certain of the creditors, and praying that it may be decreed that payment be made to plaintiff. The requisite facts are fully set forth in the opinion.

The names of counsel have not been furnished.

Botts, J.—The plaintiffs allege that the defendants *Ellis & Grostine* purchased from them, in November last, one hundred and twenty quarter sacks of flour, on credit ; that whilst the flour was in the hands of a middle man, in the city of Sacramento, it was attached and sold by defendants *Egl* and *Knight, Harmon & Childs ;* that it has been sold for the benefit of *Egl*, and that the defendant, *Talbert*, a constable making said sale, has the proceeds now in his hands as a separate and distinct fund ; they allege that *Ellis & Grostine* became insolvent after the purchase, and whilst the flour was in the hands of the middle man ; they also aver that they have demanded the proceeds, which are less than the amount of their claim, from the defendant *Talbert*, and that he has refused to comply with their demand. They pray for a perpetual injunction against *Talbert*, prohibiting him from paying over the said money to either of the other defendants, and that he may be ordered to pay over the same to the plaintiffs. An order was made requiring the defendants to show cause why the prayer of the bill should not be granted, and a restraining order was issued. The defendants appear and show for cause the want of equity upon the face of the bill.

The plaintiffs insist that the principle of the doctrine of "stoppage *in transitu*" entitles them to the proceeds of this flour. It is a cardinal principle that the vendor's lien, when he once parts with his goods,

is revived *only* by his arresting them before they reach their destination. Up to that period he can claim them in the hands of any intermediate agent, and even in the possession of creditors. If his demand be disregarded, *trover* will lie against the wrongful withholder. When the goods have passed beyond his reach, he has lost the opportunity to revive his lien. The only actions that can grow out of this doctrine, I apprehend, are *trover* and *detinue.* But it is admitted that the goods are in the hands of an innocent purchaser, and beyond the reach of the vendors. I think it follows that, as the opportunity of stoppage *in transitu* was lost, the vendor stands upon the footing of every other creditor.

My attention has been called to the case of *Hause* v. *Judson,* 4 *Dana.* A critical examination of that case will show that it has no tendency to sustain the plaintiff's position ; although, the goods having been sold, the proceeds were distributed and the priority of the vendor's lien was recognised. But there are two things to be observed in that case ; first, the sale was made under an order issuing from the court of chancery, from which the attachments issued, directing the middle man, in whose hands they were attached, to sell them, and to hold the proceeds, subject to the future order of the court ; and, secondly, and mainly, that the goods were demanded of the middle man, before he sold them, by the vendors. This, in the opinion of the court, amounted to the right of stoppage *in transitu,* and perfected, or renewed, the lien of the vendor. So, if in this case the goods, being in the hands of the sheriff ordered by the execution to sell them, had been demanded of him by the plaintiffs, he would have been liable in trover ; or, probably, if the vendors had so fixed their lien, they might have adopted the sale and sued for the proceeds ; they would, then, have relied upon a count for money had and received. But the difficulty here is, that the plaintiffs never perfected their lien ; it is too late, after the goods are sold and delivered, either by the vendee himself or by his creditors, under the operation of the law ; by the delivery, in the one case or the other, they have reached their final destination. This is precisely the doctrine to be drawn, inferentially, from the language of the court in the case of *Hause* v. *Judson.* They say : "The attachment did not, as we have seen, defeat the vendor's right, to

which the goods, being then *in transitu,* were subject. Nor could the subsequent proceedings under the attachment destroy the right, *if asserted before the goods were actually sold and dispersed* under the order of the chancellor, and the proceeds appropriated by his decree." Here, the goods have been sold and dispersed before the right was asserted, and no decree is necessary for the appropriation of the proceeds.

The prayer of the bill is denied, and the restraining order is discharged.